IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT—CHANCERY DIVISION

| | | |
|---|---|---|
| B. D. McCLURE AND ASSOCIATES, LTD., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. |
| MEADOWBROOK INSURANCE GROUP, INC., a Michigan corporation; CENTURY SURETY COMPANY, an Ohio corporation; STAR INSURANCE COMPANY, a Michigan insurance company; and WILLIAMSBURG NATIONAL INSURANCE COMPANY, a Michigan insurance company, | ) ) ) ) ) ) ) ) ) ) | 2014CH16460 CALENDAR/ROOM 15 TIME 00:00 Declaratory Jdgmt |
| Defendants. | ) | Jury Trial Demanded |

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff B. D. McCLURE AND ASSOCIATES, LTD. ("Plaintiff"), by and through counsel, brings this action for a declaratory judgment against Defendants MEADOWBROOK INSURANCE GROUP, INC. ("Meadowbrook"), CENTURY SURETY COMPANY ("Century Surety"), STAR INSURANCE COMPANY ("Star"), and WILLIAMSBURG NATIONAL INSURANCE COMPANY ("Williamsburg") (collectively, "Defendants"), pursuant to 735 ILCS 5/2-701, and hereby alleges as follows:

## PARTIES

1.     At all relevant times, Plaintiff was an active, for-profit corporation, organized under the laws of the State of Illinois, and licensed with the Illinois Department of Insurance ("IDOI") as a business entity producer. From time to time, Plaintiff produced certificates of insurance evidencing the existence of workers' compensation insurance for various taxi cab association affiliate clientele in the County of Cook, State of Illinois.



2. At all times relevant, Meadowbrook was an active, for-profit corporation, organized under the laws of the State of Michigan. Meadowbrook is a holding company that owns several subsidiary entity insurance carriers, including Century Surety, Star, and Williamsburg.

3. At all times relevant, Century Surety was an active, for-profit corporation, organized under the laws of the State of Ohio. Century Surety is an insurance carrier that is owned by, and is a subsidiary entity of, Meadowbrook.

4. At all times relevant, Star was an insurance company, organized under the laws of the State of Michigan, and authorized to write insurance business in the State of Illinois. Star is an insurance carrier that is owned by, and is a subsidiary entity of, Meadowbrook.

5. At all times relevant, Williamsburg was an insurance company, organized under the laws of the State of Michigan, and authorized to write insurance business in the State of Illinois. Williamsburg is an insurance carrier that is owned by, and is a subsidiary entity of, Meadowbrook.

6. Defendants are affiliates of one another.

## JURISDICTION AND VENUE

7. Jurisdiction over Defendants is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

8. Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the county in which the transaction, or some part thereof occurred.

## SUBSTANTIVE ALLEGATIONS

*Defendants' Insurance Business*

9. Meadowbrook is an insurance underwriter and insurance administration services company.

10. Meadowbrook writes and places various lines of insurance business, including workers' compensation insurance.

11. In its advertising materials, Meadowbrook represents that it has "over 30 regional offices located across the country to provide local decision-making, and to be closer to our agents and insurers."

12. In its advertising materials, Meadowbrook represents that it "has been developing and underwriting specialty programs for hundreds of different professional trade groups and associations."

13. In its advertising materials, Meadowbrook represents that workers' compensation insurance is a "key line" of Meadowbrook's business. Meadowbrook further represents that it "is one of the few workers' compensation carriers that writes specialty programs."

14. Meadowbrook advertises and holds itself out to the public as marketing and underwriting its insurance products, including workers' compensation insurance, through its producers and agents who operate throughout the United States, including in the State of Illinois.

15. Specifically, in its advertising materials, Meadowbrook represents that it owns "six highly-rated insurance carriers with the flexibility to operate on both an admitted and non-admitted basis."

16. Century Surety, Star, and Williamsburg are among the six (6) insurance carriers Meadowbrook owns, and Meadowbrook is referring to Century Surety, Star, and Williamsburg

3

in its advertising materials.

17. Meadowbrook's ownership of its six (6) subsidiary entity insurance carriers allows Meadowbrook to write and place insurance business in any State in which its six (6) subsidiary entity insurance carriers are authorized to write and place insurance business.

18. Meadowbrook directs and controls the business activities of its subsidiary entity insurance carriers relative to applications for insurance business submitted in States in which the subsidiary entity insurance carriers are or are not admitted, licensed, or otherwise authorized to write insurance business.

19. If one of Meadowbrook's subsidiary entity insurance carriers receives an application for insurance business in a State in which it is not admitted, licensed, or otherwise authorized to write insurance business, Meadowbrook directs and redistributes the application for insurance business to another of its subsidiary entity insurance carriers that is admitted, licensed, or otherwise authorized to write insurance business in that State.

20. For example, if a Meadowbrook customer were to apply to Century Surety for a particular line of insurance business in a State in which Century Surety was not authorized to write that line of insurance business, Meadowbrook would direct and redistribute the customer's application to another of Meadowbrook's six (6) subsidiary entity insurance carriers, such as Star or Williamsburg, which are authorized to write that particular line of business in that particular State, and then Century Surety would issue a policy number for the policy.

### *Hybrid Was an Agent of Defendants*

21. At all relevant times, Hybrid Insurance Agency, LLC ("Hybrid") was a limited liability company, organized under the laws of the State of Connecticut. Earl O'Garro, Jr. ("O'Garro") was the manager of Hybrid.

4

22. Until January 1, 2014, Hybrid held a business entity producer license in the State of Illinois, and was authorized to transact insurance business in the State of Illinois.

23. At all relevant times, Hybrid was an insurance producer and authorized agent of Defendants relative to the placement of insurance business in the State of Illinois.

24. In its advertising materials, Hybrid held itself out to the public as an agent of Defendants, and represented that it had authority to place and bind insurance coverage with Defendants. Specifically, in its advertising materials, Hybrid represented that it possessed "the unique ability to quote, bind and issue policies in-house" with a variety of insurance carriers, including Century Surety.

25. In its advertising materials, Hybrid referred to its ability to place various types of insurance business, including workers' compensation insurance, in a variety of states, including the State of Illinois, representing that with "access to a number of brokerage markets, Hybrid can find a home for just about anything."

26. Defendants authorized and allowed Hybrid to hold itself out to the public as an agent of Defendants to place workers' compensation insurance with Defendants and to bind Defendants to insurance coverage.

27. At all relevant times, Defendants held Hybrid out to the public as its agent through their written agreements with Hybrid, and by authorizing and allowing Hybrid to hold itself out to the public as an agent of Defendants with binding authority to place workers' compensation insurance with Defendants.

28. In their written agreements with Hybrid, Defendants explicitly granted Hybrid the authority to collect, receive, and transmit premiums due from insureds on coverage placed by Hybrid with Defendants.

29. In their written agreements with Hybrid, Defendants explicitly granted Hybrid the authority to bind certain insurance coverage placed by Hybrid with Defendants.

30. At all relevant times, Defendants held Hybrid out to the public as an agent of Defendants by issuing the insurance policy bound by Hybrid, as set forth below.

***Hybrid Placed Insurance Business with Defendants on Behalf of McClure & Associates***

31. From time to time, McClure & Associates procured workers' compensation insurance on behalf of its taxi cab association affiliate clientele in Chicago, Illinois.

32. McClure & Associates worked as a producer and sub-producer with the agents and insurance producers of various insurance carriers relative to the insurance policies it procured on behalf of its taxi cab association affiliate clientele in Chicago, Illinois.

33. The term "sub-producer" is defined as a licensed insurance producer who is authorized by a second licensed insurance producer to solicit, negotiate, sell, or place insurance business on behalf of the second producer, for the benefit of the second producer's insurer client.

34. In their written agreements with Hybrid, Defendants explicitly granted Hybrid the authority to work with sub-producers in placing insurance with Defendants.

35. In or about December, 2011, McClure & Associates, in its capacity as a sub-producer, requested that Hybrid place for coverage a workers' compensation policy on behalf of McClure & Associates's taxi cab association affiliate clientele in Chicago, Illinois, for the period from January 1, 2012 to January 1, 2013.

36. McClure & Associates communicated, and Hybrid understood, the subject, term, amount, and rate of insurance.

37. In their written agreements with Hybrid, Defendants explicitly recognized that, from time to time, Hybrid might wish to place business that exceeded the authority of Hybrid or

any one of Defendants' subsidiary and affiliated entity insurance carriers.

38. In their written agreements with Hybrid, Defendants explicitly granted Hybrid permission to submit applications for insurance that exceeded the authority of Hybrid or any one of Defendants' subsidiary and affiliated entity insurance carriers in order to obtain terms for delivery to the insured.

39. Upon information and belief, in or about December, 2011, Hybrid submitted to Century Surety an application for workers' compensation insurance to bind coverage for a period from January 1, 2012 to January 1, 2013, pursuant to the terms proposed by McClure & Associates and understood by Hybrid. Hybrid communicated, and Century Surety understood, the subject, term, amount, and rate of insurance.

40. Upon information and belief, in or about December, 2011, Century Surety received said application for workers' compensation insurance, and subsequently submitted it to Meadowbrook so that coverage could be bound. Century Surety communicated, and Meadowbrook understood, the subject, term, amount, and rate of insurance.

41. Upon information and belief, in or about December, 2011, Meadowbrook directed and redistributed said application for workers' compensation insurance to either Star or Williamsburg, both of which were and are authorized to write workers' compensation insurance business in the State of Illinois. Meadowbrook communicated, and either Star or Williamsburg understood, the subject, term, amount, and rate of insurance.

42. Upon information and belief, in or about December, 2011, either Star or Williamsburg accepted the application for workers' compensation insurance, and either Star or Williamsburg placed a workers' compensation policy for coverage for a period from January 1, 2012 to January 1, 2013 under the terms proposed by McClure & Associates and understood by

7

Hybrid (the "Policy"), and bound coverage under the Policy. The Policy was a Century Surety policy that was bound via one of its subsidiaries or affiliates.

43. Upon information and belief, in or about December, 2011, Century Surety accepted the application for workers' compensation insurance, and tendered the Policy number to Hybrid.

44. In or about December, 2011, Hybrid informed McClure & Associates that Century Surety accepted the application for workers' compensation insurance, and that Century Surety bound coverage under the Policy for a period from January 1, 2012 to January 1, 2013 through its contractual relationships with one of its subsidiaries or affiliates.

45. Hybrid provided to McClure & Associates the Policy number tendered by Century Surety.

46. McClure & Associates paid to Hybrid, as the agent of Defendants, the insureds' collateral insurance payments, premium, and fees necessary to bind coverage under the Policy, including approximately $332,000 in total premium.

47. At all relevant times, McClure & Associates believed and understood that Hybrid had bound coverage under the Policy for a period from January 1, 2012 to January 1, 2013 with Century Surety through Century Surety's contractual relationships with one of its subsidiaries or affiliates.

48. McClure & Associates reviewed Hybrid's advertising materials, and based upon the representations therein, McClure & Associates held a good faith, reasonable belief that Hybrid had authority to act on behalf of and bind Defendants under the Policy in the State of Illinois.

49. McClure & Associates reviewed Meadowbrook's advertising materials, and based upon the representations therein, McClure & Associates held a good faith, reasonable belief that Meadowbrook's subsidiary entity insurance carriers could place, write, and bind workers' compensation insurance policies in the State of Illinois, including the Policy.

50. Based upon the representations in Meadowbrook's advertising materials, McClure & Associates held a good faith, reasonable belief that Hybrid had authority bind workers' compensation insurance policies in the State of Illinois through Meadowbrook's subsidiary entity insurance carriers, including the Policy.

51. McClure & Associates relied to its detriment on Hybrid's actual and apparent authority to bind coverage under the Policy with Defendants in the State of Illinois by issuing certificates of liability coverage under the Policy to its taxi cab association affiliate clientele in Chicago, Illinois.

52. In or about December, 2011, and thereafter, McClure & Associates paid to Hybrid, as the agent of Defendants, the insureds' collateral insurance payments, premium, and fees necessary to continue the insurance coverage under the Policy.

53. Effective March 7, 2012, Hybrid obtained replacement insurance coverage for said taxi cab association affiliate clientele, and the Policy terminated on that date.

54. McClure & Associates paid to Hybrid the insureds' advance payments, collateral insurance payments, premium, and fees necessary to continue to have insurance coverage in force under the Policy for the period of January 1, 2012 to March 7, 2012.

55. Under section 500-115(b) of the Illinois Insurance Code,

> An insurer that issues a policy of insurance shall be deemed to have received payment of the premium if the insured paid any insurance producer requesting the coverage.

*See* 215 ILCS 5/500-115(b).

56. Through its written agreements with Defendants, Hybrid was an actual agent of each Defendant.

57. Alternatively, Hybrid was an apparent agent of Defendants.

58. At all relevant times, Defendants consented to and knowingly acquiesced to Hybrid's exercise of authority relative to binding coverage under the Policy.

59. Both Hybrid and Defendants acted in a manner that would lead a reasonable person to conclude that Hybrid was an agent of Defendants with binding authority for workers' compensation insurance coverage, because, upon information and belief, (a) in its advertising materials, Hybrid held itself out to the public as an agent of Defendants, and represented that it had authority to place and bind insurance coverage with Defendants, (b) Defendants authorized and allowed Hybrid to hold itself out to the public as an agent of Defendants to place workers' compensation insurance with Defendants and to bind Defendants to insurance coverage, (c) Hybrid submitted to Century Surety an application for workers' compensation insurance and requested that Century Surety or its subsidiaries or affiliates bind coverage for the Policy, (d) Meadowbrook directed and redistributed said application to either Star or Williamsburg, (e) either Star or Williamsburg communicated to Century Surety that it had accepted said application, and (f) Century Surety accepted said application, and tendered the Policy number to Hybrid.

*Controversy Between the Parties*

60. Defendants, and each of them, deny placing, binding, and/or issuing the Policy.

61. McClure & Associates has paid claims submitted to it by its taxi cab association affiliate clientele in Chicago, Illinois, due to Defendants' denial of coverage under the Policy.

62. Additionally, in its regulatory authority, the Illinois Department of Insurance is alleging that McClure & Associates issued certificates of insurance under the Policy to its taxi cab association affiliate clientele without authority.

63. Thus, Defendants' denial of placing, binding, and/or issuing the Policy has put McClure & Associates's business in jeopardy.

64. McClure & Associates would endure significant hardship absent a judicial declaration that the Policy (a) was issued by one or more Defendants for the period from January 1, 2012 to January 1, 2013, and (b) remained in full force and effect from January 1, 2012 until it was terminated on March 7, 2012, as the Illinois Department of Insurance may take adverse regulatory action against McClure & Associates.

## COUNT I – Declaratory Judgment

65. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66. Plaintiff brings this claim pursuant to 735 ILCS 5/2-701.

67. Plaintiff has a legal tangible interest in the claims set forth herein. Defendants have an opposing interest in the claims set forth herein.

68. There is an actual controversy between the parties concerning such interests.

69. Pursuant to 735 ILCS 5/2-701(a):

> The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of [any] ... contract or other written instrument, and a declaration of the rights of the parties interested.

70. The Court may, and should, declare the rights or other legal remedies of Plaintiff vis-à-vis Defendants and their actions described herein. Namely, Plaintiff seeks a declaration that:

11

(a) The Policy was issued by one or more Defendants for the period from January 1, 2012 to January 1, 2013, and

(b) The Policy was in full force and effect from January 1, 2012 until it was terminated on March 7, 2012.

WHEREFORE, Plaintiff prays for an Order as follows:

A. A declaration that the Policy was issued by one or more Defendants for the period from January 1, 2012 to January 1, 2013;

B. A declaration that the Policy was in full force and effect from January 1, 2012 until it was terminated on March 7, 2012;

C. Awarding Plaintiff its reasonable attorneys' fees and costs; and

D. Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by a 12-person jury on all issues so triable.

Plaintiff B. D. McCLURE AND ASSOCIATES, LTD.,

By: *[signature]*
Thomas A. Zimmerman, Jr.
Adam M. Tamburelli
Frank J. Stretz
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm I.D. No. 34418
www.attorneyzim.com

12

Alvin R. Becker
BEERMANN PRITIKIN MIRABELLI
SWERDLOVE, LLP
161 North Clark Street, Suite 2600
Chicago, Illinois 60601
(312) 621-9700

Co-Counsel for the Plaintiff